**THE LAW OFFICE OF RENÉ MYATT**
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423
(718) 468-3588
RENÉ MYATT, ESQ. (RM-4406)
Attorneys for Sean Hill
Judgment Creditor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: May 4, 2011
Hearing Time: 10:00 a.m.

-------------------------------------------------------------------X

In Re

Case No.: 11-11363-ALG

NATHANIEL AJUNWA and REGINA AJUNWA,

Chapter 7

Debtors.

-------------------------------------------------------------------X

## AFFIRMATION IN OPPOSITION TO DEBTORS' NOTICE OF MOTION RETURNABLE FOR MAY 4, 2011 SEEKING AN ORDER PURSUANT TO 11 U.S.C. §522(f) TO AVOID THE JUDICIAL LIEN OF SEAN HILL

I, **RENÉ MYATT, ESQ.**, an attorney duly admitted to practice law before the

Courts of the State of New York, and admitted to practice within the United States Bankruptcy

Court, Southern and Eastern Districts of New York, affirms the truth of the following pursuant to

CPLR § 2106:

1. I am the attorney of record for the Secured Creditor, **SEAN HILL** ("**Mr. HILL**").

2. I make this affirmation upon information and belief. The source of my information and

   the basis of my belief are the records and files maintained by THE LAW OFFICE OF

   RENÉ MYATT, which I believe to be true and correct.

3. This affirmation is submitted in opposition to debtors – **NATHANIEL AJUNWA and**

   **REGINA AJUNWA's** ("**AJUNWAS**") motion to avoid the judicial lien of Mr. HILL.

## BACKGROUND HISTORY

4. On or about August 12, 2006, Sean Hill was involved in a dreadful motor vehicle

1

accident. The accident occurred at the intersection of Atlantic Avenue and Georgia

Avenue in Kings County. Mr. Hill suffered very serious injuries, some of which included

the loss of his kidney, his spleen and he remained in a coma for approximately three

months. See **Exhibit "A", Copy of Summons & Complaint**

5. On September 27, 2010, a jury trial was held before Justice Robert Miller, in Kings
   County to address the issues of liability and damages with respect to the motor vehicle
   accident.

6. On October 1, 2010, after deliberation by the jury, an award was granted to Mr. Hill in
   the amount of FOUR HUNDRED AND THIRTY THOUSAND DOLLARS
   ($430,000.00) for the damages sustained by Mr. Hill as a result of the accident.
   Judgment was then duly entered with the Clerk of the Court on October 21, 2010. See
   **Exhibit "B", Copy of Judgment.**

7. The debtors initially filed for bankruptcy protection under Chapter 13. The judgment
   creditor filed objection to the debtors' Chapter 13 filing. Motion practice ensued and the
   debtors ultimately voluntarily dismissed their Chapter 13 petition. Subsequent to the
   Chapter 13 filing, the debtors attempted to convert their Chapter 13 filing to a Chapter 7.

8. Their sole reason for attempting said conversion was to take advantage of the new
   homestead exemption.

9. Subsequently, the debtors voluntarily dismissed their Chapter 13 petition and then re-
   filed a petition under Chapter 7 all with the motive of fraudulently taking advantage of
   the new homestead exemption. **See Exhibit "C" (Copy of Letter dated January 12,
   2011 from debtors counsel to Hon. Shelly C. Chapman)**

10. Following the voluntary dismissal of their Chapter 13 petition and unaware that the debtors re-filed under Chapter 7, the judgment creditor, Sean Hill, scheduled a deposition pursuant to New York's Civil Practice Laws and Rules ("NYCPLR") §5223 on March 28, 2011 in an attempt to ascertain how the debtors planned to satisfy the personal injury judgment rendered after trial. Neither debtor appeared for the taking of their depositions.

11. Some days after the scheduled depositions were to take place, your undersigned was served with motion papers by the Ajunwas asking to be relieved of Mr. Hill's Judgment. The Ajunwas filed for bankruptcy protection on March 15, 2011, exactly thirteen (13) days before the scheduled depositions were to take place.

12. The Ajunwas filed for bankruptcy protection under Chapter 7 in bad faith as the debtors are without debt.

## ARGUMENT

### I. THE DEBTORS VOLUNTARY DISMISSAL OF THEIR CHAPTER 13 PETITION TO RE-FILE UNDER CHAPTER 7 TO TAKE ADVANTAGE OF THE NEW HOMESTEAD EXEMPTION IS FRAUDULENT

13. The debtors filed a Chapter 13 petition on November 9, 2010.

14. Under their Chapter 13 filing the debtors claimed the then existing homestead exemption.

15. The judgment creditor, Sean Hill objected to the debtors Chapter 13 filing.

16. The debtors attempted to convert their Chapter 13 filing to a Chapter 7 with the blatant intention of obtaining a benefit under the new homestead exemption.

17. The judgment creditor prepared opposition to the motion for conversion, however debtors voluntarily dismissed their Chapter 13 petition prior to the judgment creditor's opposition being filed with this Court.

18. Lacking the confidence that their conversion from a Chapter 13 to a Chapter 7 would permit them to take advantage of the new homestead exemption, the debtors had the audacity to voluntarily dismiss their Chapter 13 petition and re-file under Chapter 7 confident that they would be successful in taking advantage of the new homestead exemption.

19. Incredulously, it is at the Creditors Meeting on April 26, 2011 that counsel for the debtors confirms the manipulative use of the new homestead exemption by asserting that the debtors "voluntarily dismissed their Chapter 13 petition to take advantage of the new homestead exemption."

20. The abuse of the bankruptcy protection laws by the debtors is overwhelmingly blatant. They are seeking yet another bankruptcy protection vehicle to avoid paying their primary creditor, Sean Hill.

21. Certainly, the law as promulgated did not and would not have permitted the abuse and fraudulent practices of the bankruptcy laws as they are utilized by the debtors.

## II.   THE HOMESTEAD EXEMPTION DOES NOT APPLY

22. The purpose of the homestead exemption is grounded in its public policy considerations. It serves the purpose of promoting stability and making sure that families do not become public charges of the state.

23. By the debtors' own admission, to wit: a perusal of their Voluntary Petition and their testimony at the Creditors Meeting, the debtors are substantially without debt and are not in danger of becoming public charges of the state.

24. The danger in not becoming a public charge is evident based on the statements made by the debtors. First, the Ajunwa Debtors are both well-established social workers,

professional people who are owners of a two-family home located in Bronx County. They have owned this home for over 15 years that require minimal maintenance.

25. Second, the Ajunwas, are current with their mortgage payments and being owners of a two-family home, they accumulate rental income. By using the rental income to pay their mortgage, the Ajunwas enjoy minimal maintenance of their home, thus, freeing up their finances so that it may be applied to other expenditures.

26. Third, the annual salary of the debtors' household is consistent with that of an upper middle class family totaling close to ONE HUNDRED EIGHT THOUSAND ($108,000.00) DOLLARS a year. See **Exhibit D – Copy of Transcript of 341(a) Creditors Meeting dated December 9, 2010, p.11, ll. 5-9.**

27. Further, the Ajunwas have been able to manage the extent of their debt in such a diligent fashion that they are able to provide for the private schooling of their grandchildren. See **Exhibit D – Copy of Transcript of 341(a) Creditors Meeting dated December 9, 2010, p.12, ll. 9-12**

28. The judgment creditor equally objects to the debtors claiming the tuition payments they make for their grandchildren's school; and maintains that that too is a fraud perpetuated on this tribunal.

29. This Chapter 7 filing by the Ajunwas is an insult to this Court and evinces their abusive tactic in manipulating and taking advantage of the Bankruptcy Code as well as making a spectacle of the judicial system.

30. The homestead exemption does not apply because it is clear, the debtors are in no danger of becoming public charges.

31. The homestead exemption, and Bankruptcy laws in general, were not established as

a means for debtors to escape the responsibilities of paying their debts. If the avoidance of one's liability to his or her debts could be so easily manipulated then such bad faith filings would engulf Bankruptcy courts.

### III.   DEBTORS' APPRAISAL IS SELF-SERVING, UNRELIABLE AND UNTRUSTWORTHY

32. The appraisal submitted by the debtors must be rejected. The comparisons found in the appraisal report is inapposite to the subject premises; they are not within the proximity of the subject premises. Moreover, the comparables include homes that have been "transferred" over six (6) months ago which are too remote in time. The comparables conducted by the undersigned show the value of the subject property is well over half a million dollars. See attached **Exhibit E – Comparable Search**

33. The Ajunwas' home is a two-family house located in an upper middle-class neighborhood in the Bronx. Based on your undersigned's real estate practice, the debtors' appraisal is unreliable and untrustworthy. See **Exhibit F – Appraisal Report.** Property such as the Ajunwas is valued at much higher prices.

34. Accordingly, based on the foregoing reasons, the undersigned objects to the Ajunwas' appraisal report and its submission to this Court for purposes of determining the value of the property.

### IV.   DEBTORS HAVE FILED THIS CHAPTER 7 PETITION IN BAD FAITH

35. The Ajunwas Chapter 7 filing is clearly in bad faith as they are virtually without debt and, based on the above mentioned facts, presumably have room to free up their finances for application elsewhere. The Chapter 7 filing is specifically targeted to

avoid the judgment Mr. Hill has obtained against the debtors as a result of the injuries he received from the motor vehicle accident they caused.

36. The debtors seek to avoid Mr. Hill's judicial lien in its entirety. It is abundantly clear that the Ajunwas have no intention of paying Mr. Hill's judgment as is further proven by the debtors attempted use of the new homestead exemption by re-filing under Chapter 7. To intentionally disregard Mr. Hill, the only substantial creditor, is to make a mockery of the intent and spirit of the bankruptcy law.

37. Therefore, the Ajunwas have transparently shown that they do not wish to participate in a search of their assets that would no doubt establish that they can fully satisfy Mr. Hill's judgment. The Ajunwas' main goal is to wipe out Mr. Hill's judgment and they are using the Court to reach this goal.

38. Mr. Hill, as a secured creditor, pursuant to the Bankruptcy Code and New York's Civil Practice Law and Rules is entitled to depose the debtors in order to assess the financial condition of the debtors.

39. The debtors are attempting to hinder Mr. Hill in gathering the asset information needed to satisfy his judgment and the debtors are using the Bankruptcy Code as a means to achieve their end.

40. As stated earlier, Mr. Hill attempted to ascertain the Ajunwas' assets by serving a Subpoena on the debtors on March 15, 2011. See **Exhibit G – Affidavit of Service** The deposition pursuant to the NYCPLR §5223 was scheduled for March 28, 2011. The Ajunwas did not appear on the scheduled date.

41. Given the timing of the re-filing under Chapter 7 which occurred on March 15, 2011, days before the scheduled deposition, coupled with the filing of the debtors' motion to

avoid the judicial lien, it is clear that the Ajunwas' purpose for filing this bankruptcy proceeding is to avoid the liability they have in connection with Mr. Hill in its entirety.

42. According to the Ajunwas debt to salary ratio, it is evident that the debtors have sufficient means to survive. Based on the expenditures that the debtors have cited in their petition and schedules, it is not far-fetched to deduce that eighty to ninety percent of their annual salary is being placed elsewhere. Both debtors are citizens of Nigeria and have strong ties to their native country. Both have been very responsible and resourceful in being able to maintain their financial lives. See **Exhibit D – Copy of 341(a) Creditors Transcript Hearing, December 9, 2010, p. 13, ll 12-25, p. 14, ll. 8-25**

43. Now, the Ajunwas come to the court seeking to avoid Mr. Hill's judgment. Therefore, the overall motive for the filing of this petition is for the Ajunwa debtors to completely escape Mr. Hill's judgment.

**WHEREFORE,** it is respectfully requested that the debtors NATHANIEL AJUNWA and REGINA AJUNWA's motion to avoid the judicial lien of Sean Hill be denied in its entirety and with such further relief as the Court deems just and proper.

Dated: Hollis, New York
April 27, 2011

Yours, etc.

THE LAW OFFICE OF RENÉ MYATT
Attorneys for Secured Creditor
**SEAN HILL**
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423
(718) 468-3588

TO:
GEORGE BASSIAS, ESQ.
Attorney for Debtors
21-83 Steinway Street
Astoria, New York 11105

(718) 721-4441

ALLAN L. GROPPER
United States Bankruptcy Judge
Alexander Hamilton Custom House
One Bowling Green – Room 610
New York, New York 10004

ROBERT L. GELTZER, ESQ
Chapter 7 Trustee
1556 Third Avenue, Suite 505
New York, New York 10128
(212) 410-0100

UNITED STATES TRUSTEEE
SOUTHERN DISTRICT OF NEW YORK
One Bowling Green
New York, New York 10004

**EXHIBIT "A" – Copy of Summons and Complaint**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

SEAN HILL,

                                  Plaintiff,

-against-

NATHANIEL AJUNWA and REGINA AJUNWA,

                                  Defendants.

-------------------------------------------------------------------X

Index No. 24874/07

Date Purchased

Plaintiff(s) designate(s)

County as the place of Trial
KINGS

The basis of the venue is
Plaintiff's Residence

**S U M M O N S**

TO THE ABOVE NAMED DEFENDANT(S):

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiff's Attorneys within twenty (20) days after the service of this Summons, exclusive of the date of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: Hollis, New York
       July 3, 2007

                                   Yours, etc.

                                   Rene' Myatt, Esq.
                                   Attorney for Plaintiff(s)
                                   204-04 Hillside Avenue, 2nd Floor
                                   Hollis, New York 11423
                                   (718) 468-3588

Defendants address:
Nathaniel Ajunwa
912 E. 220th Street
Bronx, New York 10469

Regina Ajunwa
58 Roma Orchard Road
Peekskill, New York 10566

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-------------------------------------------------------------X

SEAN HILL,

                      Plaintiff,

      -against-

NATHANIEL AJUNWA and REGINA AJUNWA,

                      Defendant.

-------------------------------------------------------------X

Index No.

**VERIFIED COMPLAINT**

*verify by atty*

      Plaintiff, by his attorney, RENÉ MYATT, ESQ. as and for his Verified

Complaint, alleges as follows:

1. That at all times hereinafter mentioned, the plaintiff, SEAN HILL was and still is
   a resident of the Kings County, State of New York.

2. That at all times hereinafter mentioned, defendant, REGINA AJUNWA
   (hereinafter referred to as "REGINA") was and still is a resident of the county of
   Westchester.

3. That at all times hereinafter mentioned, defendant, NATHANIEL AJUNWA
   (hereinafter referred to as "NATHANIEL") was and still is a resident of Bronx
   County.

4. That at all times hereinafter mentioned, defendant Regina was the owner of a
   motor vehicle bearing New York license plate number DHY1169.

5. That at all times hereinafter mentioned, the defendant, NATHANIEL operated the
   above-described motor vehicle.

6. That at all times hereinafter mentioned, defendant NATHANIEL controlled the
   motor vehicle described above.

3

7. That at all times hereinafter mentioned, the defendants maintained the motor vehicle described above.

8. That at all times hereinafter mentioned, the public streets on Atlantic Avenue and Georgia Avenue in Kings County were still are much traveled public thoroughfares.

9. That at all times hereinafter mentioned, the public streets on Atlantic Avenue and Georgia Avenue in Kings County were and still are in constant use by the residents of Kings County.

10. That imposed upon the defendant REGINA as owner by law of the motor vehicle , is the duty of managing it so it will not become dangerous to those lawfully using said streets, and to those lawfully traveling on the public streets.

11. That at all times hereinafter mentioned, the public streets on Atlantic Avenue and Georgia Avenue Kings County were and still are public thoroughfares which the defendant NATHANIEL had a duty to exercise safety and due care.

## FIRST CAUSE OF ACTION

12. That on the 12th day of August 2006, the defendant NATHANIEL disregarded his duty and negligently and carelessly made an illegal U-turn on Atlantic Avenue causing the Plaintiff to strike the above-described motor vehicle.

13. That on to the 12th day of August 2006, the defendant NATHANIEL disregarded his duty and negligently and carelessly made an illegal U-turn permitting an unsafe and dangerous condition to happen.

14. That on the 12th day of August 2006, the Plaintiff, SEAN HILL, was rightfully and lawfully, in the exercise of due prudence, riding his motorcycle on Atlantic



4

Avenue and Georgia Avenue in King County when he was caused to strike the above-described motor vehicle driven by defendant-NATHANIEL.

15. The defendants were negligent in the ownership, operation, management, maintenance and control of the aforesaid motor vehicle; in causing, suffering, permitting and allowing the motor vehicle, to be, become, remain and create an unsafe and dangerous condition; in causing, permitting and allowing an unsafe driver to operate said motor vehicle; in failing to yield to person or persons traveling along the thoroughfare at Atlantic Avenue and Georgia Avenue in Kings County; in failing to learn the rules of the road and safe travels; in failing to warn the public of the unsafe driver behind the wheel of the above-described motor vehicle; in causing, suffering, permitting and allowing all of the foregoing to be, become and remain for a considerable period of time; in failing to be competent and well-trained in the operation of the aforesaid motor vehicle; in failing to supervise the repair of the aforesaid motor vehicle; in causing, suffering, permitting and allowing the plaintiff to be strike the above described vehicle; in failing and omitting to take proper and suitable precaution to prevent the happening of the aforesaid occurrence; in failing to remedy the aforesaid condition.

16. The defendants, its agents, servants and/or employees had constructive knowledge of all of the foregoing.

17. The Plaintiff, SEAN HILL, in no way contributed to the happening of the aforesaid occurrence which was due solely to the carelessness, recklessness and negligence of the defendant, his agents, servants and/or employees.

18. That by reason of the foregoing, the plaintiff, SEAN HILL, sustained severe and personal injuries; he was rendered sick, sore, lame and disabled and still suffers from great bodily pain and mental anguish. He was confined to his bed and home for an extended period of time; he was and still is unable to perform his usual duties and vocations; he has been caused to and continue to need hospital and medical care, aid and attention for which he has and continues to spend money; some of his injuries are permanent in nature.

19. That by reason of the negligence of the defendants, the plaintiff, SEAN HILL, has sustained serious injuries as defined in Section 5102 (d) of the Insurance Law of the State of New York and/or economic loss greater than basic economic loss as defined in Section 5102 (a) of the Insurance Law of the State of New York.

20. This action falls within one or more of the exceptions set forth in CPLR Section 1602

21. As against the defendant, the plaintiff, SEAN HILL, has been damaged in the sum of TWO MILLION ($2,000,000.00) DOLLARS;

WHEREFORE, the plaintiff, SEAN HILL, demands judgment as follows: as against the defendants the plaintiff, SEAN HILL, demand judgment in the sum of TWO MILLION ($2,000,000.00) DOLLARS; together with costs and disbursements of this action.

Dated: Hollis, New York
July 6, 2007

Yours, etc.

RENE MYATT
Attorney for Plaintiff
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423
(718) 468-3588

6

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF QUEENS ) SS.:

René Myatt, an attorney at law admitted to practice before the Courts of the State of New York, affirms the following to be true under penalties of perjury:

I am the attorney of record for the Plaintiff in this action;

I have read the annexed COMPLAINT and know the contents thereof, and the same are true based upon information and belief. My belief, as to those matters herein not stated upon knowledge are: Interviews and/or discussions had with said plaintiff and reports of investigation cause to be made by the plaintiff and/or documents which are now in affirmant's possession and other data relating thereto.

The reason I make this foregoing verification instead of the plaintiff, because the plaintiff resides at the address indicated below:

806 Halsey Street
Brooklyn, New York 11233

Outside of the County where your affirmant's office is located.

Dated: Hollis, New York
July 6, 2007

RENÉ MYATT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS INDEX NO.: 24874/07

SEAN HILL,

              Plaintiff,

    -against-


NATHANIEL AJUNWA and REGINA AJUNWA,
          Defendant.

---

## SUMMONS and VERIFIED COMPLAINT

---

SECTION 130-1.1 SIGNATURE:

*René Myatt*

RENÉ MYATT

---

RENÉ MYATT, ESQ.
Attorney for Plaintiff
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423
Telephone: (718) 468-3588
Facsimile: (718) 468-5731

---

8

**EXHIBIT "B" – Copy of Judgment**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------X
SEAN HILL,

**NOTICE OF ENTRY**

                    Plaintiff(s),

                                                    Index No.: 24874/07
          -against-

NATHANIEL AJUNWA and REGINA AJUNWA,

                    Defendant(s)
------------------------------------------------------------------X
**SIRS:**

**PLEASE TAKE NOTICE,** that a Judgment of which the within is a true copy was duly entered

on October 21, 2010 in the office of the clerk of the Supreme Court of the State of New York

County of Kings.

Dated: October 26, 2010
          Hollis, New York

                                        Yours, etc.,

                                        **RENÉ MYATT, ESQ.**
                                        Attorney for Plaintiff
                                        204-04 Hillside Avenue, 2nd Floor
                                        Hollis New York, 11423
                                        (718) 468-3588

TO:    **MONFORT, HEALY, McGUIRE & SALLEY**
       **1140 Franklin Avenue**
       **P.O. Box 7677**
       **Garden City, New York 11530**

       **Nathaniel Ajunwa**
       **912 E. 220th Street**
       **Bronx, New York 10469**

       **Regina Ajunwa**
       **912 E.220th Street**
       **Bronx, New York 10469**

Regina Ajunwa
58 Roma Orchard Road
Peekskill, New York 10566

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------X

SEAN HILL,

Index No.: 24874-07

Plaintiff,                     J U D G M E N T

-against-

NATHANIEL AJUNWA and REGINA AJUNWA,

Defendant.

-----------------------------------------------------------------X

The issues in the above entitled action having duly come on for trial before Justice

Robert Miller, and a jury, at a Supreme Court, IAS Part _62_ of this Court held at the

courthouse thereof, located at 360 Adams Street; Brooklyn, New York on the 27th, 28th,

29th, of September 2010 and the 1st day of October 2010, and the Plaintiff having

appeared by his attorney, RENÉ MYATT, ESQ., and NATHANIEL AJUNWA and

REGINA AJUNWA having appeared by MONTFORT, HEALY, McGUIRE & SALLEY

by Michael Adams, Esq., and the issues having been duly tried; and during a charge

conference defendants having conceded liability on September 30, 2010 and at the end of

the entire trial on October 1, 2010, a jury on the issue of damages, having awarded the

Plaintiff, SEAN HILL the sum of $400,000.00 for past Pain and Suffering and the sum of

$30,000.00 for past Loss Earnings, the sum of zero for future Pain and Suffering; all

jurors having been polled and having affirmed the award; and , thereafter, the Plaintiff

having moved for the judgment to be entered;

NOW, upon motion by RENÉ MYATT, ESQ. attorney for the Plaintiff, it is,

ADJUDGED that Plaintiff SEAN HILL, currently residing at 806 Halsey Avenue;

Brooklyn, New York 11233, have a judgment and recover from the defendants,

NATHANIEL AJUNWA and REGINA AJUNWA, the sum of $430,000.00 with interest

1

thereon from October 1, 2010, the date of the verdict $ 1,877.50 , making in all

the sum of $ 431,827.50 , and that the Plaintiff have execution thereof; and it

is further,

ADJUDGED that Plaintiff have judgment and recover from the defendants

NATHANIEL AJUNWA and REGINA AJUNWA, the costs and disbursements in the

sum of $ 1145.00 , and that the Plaintiff have execution thereof.

Judgment entered this 21 day of Oct 20 10

FILED

OCT 2 1 2010

_____
CLERK
KINGS COUNTY CLERK'S OFFICE

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

SEAN HILL,

Index No.: 24874-07

Plaintiff,

-against-

NATHANIEL AJUNWA and REGINA AJUNWA,

Defendant,

## JUDGMENT

**THE LAW OFFICE OF RENÉ MYATT**
**204-04 HILLSIDE AVENUE**
**2ND FLOOR**
**HOLLIS, NEW YORK 11423**
**PHONE: (718) 468-3588**
**FAX:   (718) 468-5731**

Pursuant to 22 NYCRR 130-1 1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certified that upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned there from and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200 41-a

Dated:  Hollis, New York *October 18, 2010*

Signature *René Myatt*

Print Signer's Name: René Myatt

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

SEAN HILL,

                                             NOTICE OF ENTRY

                Plaintiff(s),                       Index No.: 24874/07

        -against-

NATHANIEL AJUNWA and REGINA AJUNWA,

                Defendant(s)

-------------------------------------------------------------------X

===================================================================

**NOTICE OF ENTRY**

===================================================================

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New
York State, certified that upon information and belief and reasonable inquiry, (1) the contentions
contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating
pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other
persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned
there from and that (ii) if the matter involves potential claims for personal injury or wrongful death, the
matter was not obtained in violation of 22 NYCRR 1200.41-a.

Dated:         Hollis, New York *October 26, 2010*

Signature:      _____

Print Signer's Name: René Myatt

**EXHIBIT "C" – Copy of Letter to Hon. Shelly C. Chapman**

**GEORGE BASSIAS**
ATTORNEY AT LAW

21-83 Steinway Street
Astoria, New York 11105

TEL: (718) 721-4441
FAX: (718) 721-7981
Email: gbassias@yahoo.com

January 12, 2011

HONORABLE SHELLY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE
ALEXANDER HAMILTON CUSTOM HOUSE
ONE BOWLING GREEN-ROOM 610
NEW YORK, NY 10004

      RE: NATHANIEL & REGINA AJUNWA
      CASE: 10-15981
      MOTION RETURN DATE: 2/10/11

Dear Honorable Judge Chapman:

    I was informed by Tracy Marcado that my motion to convert to Chapter 7 is improper in form, and that there is a voluntary conversion form that must be filed with the clerk.

    Please accept my motion papers only as opposition to the motion of Rene Myatt, Esquire. In addition, be advised that it is the intention of debtors to discontinue/dismiss or convert their 13 for a Chapter 7 once it is verified that the new homestead exemption law is being enforced. It is my understanding that it takes effect 1/22/11. If we do not gain the retroactive benefit by converting from 13 to 7, we will ask for a dismissal and re-file under Chapter 7.

    Thank you for your courtesy in this matter.

            Yours Very Truly,

            GEORGE BASSIAS

CC:
Rene Myatt, Esq.
204-04 Hillside Ave-2nd Floor
Hollis, NY 11423

Jeffrey Sapir, Esq.
399 Knoll Wood Road-Ste. 102
White Plains, NY 10603

US Trustee
One Bowling Green
NY, NY 10004

**EXHIBIT "D" – Copy of Transcript of 341(a) Meeting**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X

IN THE MATTER OF:

                                    Case No. 10-15981
                                    (Jeffery L. Sapir)

      NATHANIEL AJUNWA
      AND REGINA AJUNWA,

           Debtors.


------------------------------X

                    341 HEARING

                    December 9, 2010

HELD AT:            OFFICE OF THE UNITED STATES TRUSTEE
                    New York, NY

BEFORE:             JEFFERY L. SAPIR
                    Trustee

APPEARANCES:        GEORGE PASIAS, ESQ.
                    Counsel for the Trustee

                    RENE MYATT, ESQ.
                    Counsel for the Creditors

                    MR. TAYLOR LLOYD, ESQ.
                    Counsel for the Creditors

```
                    I N D E X

                                    RE      RE     V.
WITNESS        DIRECT   CROSS    DIRECT   CROSS    D.     J


                  E X H I B I T S


                                                  For   In
PETITIONER             DESCRIPTION                I.D.  Ev.




RESPONDENT             DESCRIPTION                I.D.  IN EV.
```

**Ubiqus/Nation-Wide Reporting & Convention Coverage**
22 Cortlandt Street – Suite 802, New York, NY 10007
Phone: 212-227-7440 * 800-221-7242 * Fax: 212-227-7524

1

2     TRUSTEE JEFFERY SAPIR:  Okay, this is

3     track no. 19.  It's in the matter of

4     Nathaniel and Regina Ajunwa.  You want to

5     raise your right hands please? Solemnly swear

6     to tell the truth, the whole truth, and

7     nothing but the truth, so help you God.

8          MR. NATHANIEL AJUNWA:  I do.

9          MS. REGINA AJUNWA:  I do.

10         MR. SAPIR:  State your name and your

11    address please.

12         MR. AJUNWA:  Nathaniel Ajunwa, 912 East

13    220th Street, Bronx, New York 10469.

14         MS. AJUNWA:  Regina Ajunwa, 912 East

15    220th Street, Bronx, New York 10469.

16         MR. SAPIR:  Counsel.

17         MR. GEORGE PASIAS:  George Pasias

18    [phonetic], admitted to the Southern

19    District.

20         MR. SAPIR:  Creditors.

21         MS. RENE MYATT:  Yes, Rene Myatt, 204-04

22    Hillside Avenue, Hollis, New York 11423.

23         MR. TAYLOR LLOYD:  Taylor Lloyd

24    [phonetic], 204-04 Hillside Avenue, second

25    floor, Hollis, New York 11423.

1

2          MR. SAPIR:  Okay, any other creditors -

3     -? I show you this petition and supporting

4     schedules where my thumb is.  Is that your

5     signatures?

6          MR. AJUNWA:  Yes.

7          MS. AJUNWA:  Yes.

8          MR. SAPIR:  And the statements that you

9     made, were they true and correct to the best

10    of your knowledge?

11         MR. AJUNWA:  Yes.

12         MS. AJUNWA:  Yes.

13         MR. SAPIR:  Okay, for the record I've

14    verified that as picture IDs by the New York

15    State Driver's Licenses, Social Security

16    numbers from their Social Security cards.

17    Have you folks owned any real estate in the

18    last six years?

19         MS. AJUNWA:  Bought the house that's in-

20    -

21         [crosstalk]

22         MR. SAPIR:  I'll try to give them my

23    input.  That's the place where you reside,

24    right? Okay.  And that's the house at 912

25    East 220th Street in the Bronx?

1

2          MR. AJUNWA:  Yes.

3          MS. AJUNWA:  Yes.

4          MR. SAPIR:  And that's a two-family

5    house?

6          MS. AJUNWA:  Yes.

7          MR. AJUNWA:  Yes.

8          MR. SAPIR:  And the house is owned in

9    joint names?

10         MS. AJUNWA:  Yes.

11         MR. AJUNWA:  Yes.

12         MR. SAPIR:  Have you owned any stocks,

13   bonds, and/or mutual funds in the last year?

14         MS. AJUNWA:  No.

15         MR. AJUNWA:  No.

16         MR. SAPIR:  IRA's, Keyos [phonetic],

17   401Ks, 403Bs?

18         MS. AJUNWA:  No.

19         MR. AJUNWA:  No.

20         MR. SAPIR:  Any bank accounts, check or

21   savings?

22         [crosstalk]

23         MR. SAPIR:  You have a 401K at work? And

24   somebody has an IRA?

25         MS. AJUNWA:  Yes.

MR. SAPIR:  You have the IRA?

MS. AJUNWA:  Ahum.

MR. SAPIR:  Okay.  And you have an annuity at work also, correct?

MS. AJUNWA:  Yes.

MR. SAPIR:  Have you had any bank accounts, either check or savings within the last year?

MS. AJUNWA:  Yes.

MR. AJUNWA:  Yes.

MR. SAPIR:  Which bank?

MS. AJUNWA:  I have two - -

MR. AJUNWA:  Chase, and I have Citiba.k.

MR. SAPIR:  Okay, so there's a Chase and Citibank?

MR. AJUNWA:  Yeah.

MR. SAPIR:  Okay, they both in joint names? Or was it one account in your name and one account in her name?

MR. AJUNWA:  One account in her name.

MR. SAPIR:  Okay, so the Chase account is in your name?

MR. AJUNWA:  - -

MR. SAPIR:  And the Citibank is in

husband's.  Counsel, you should check--

      MR. AJUNWA:  Joint.

      MS. AJUNWA:  Joint.

      MR. SAPIR:  It's joint.

      MR. AJUNWA:  Ahum.

      MR. SAPIR:  Both of them?

      MR. AJUNWA:  Ahum.

      MR. SAPIR:  Okay.

      MR. AJUNWA:  - -

      MR. SAPIR:  The Citibank is joint?

      MR. AJUNWA:  Is joint.  - - is not

joint.

      MR. SAPIR:  Okay.  That's where she

keeps all her private money.  Okay.  Have you

owned a vehicle within the last year?

      MR. AJUNWA:  Yes.

      MS. AJUNWA:  Yes.

      MR. SAPIR:  What's the make and model?

      MR. AJUNWA:  2002 - -.

      MR. SAPIR:  Okay, is that owned by you

free and clear?

      MR. AJUNWA:  Yes.

      MR. SAPIR:  Within--let me ask you this;

did you file your 2009 federal and state

income taxes?

    MR. AJUNWA:  Yes we did.

    MS. AJUNWA:  Yes.

    MR. SAPIR:  Did you ask for a refund?

    MR. AJUNWA:  Yes we did.

    MR. SAPIR:  Approximately how much did you get back and when did you get it?

    MR. AJUNWA:  Approximately 4,000 and some change.

    MR. SAPIR:  Okay.  And approximately when did you get it?

    MR. AJUNWA:  About January.

    MR. SAPIR:  Okay, so you filed it right away and then you got it?

    MR. AJUNWA:  Ahum.

    MR. SAPIR:  Counsel, did you file a claim, cause I don't see a copy of a claim.

    MR. PASIAS:  Yeah, I did, I did.  This is the claim, it's filed.

    MR. SAPIR:  This is not an official claim.  You've got to go onto the website, court's website, and use the official claim. Technically this is not a claim.

    MR. PASIAS:  Okay, I'll go on the

court's website.

MR. SAPIR:  Yeah, there's an official

form.  Yeah, there's an official Southern

District form.

MR. PASIAS:  Okay.

MR. SAPIR:  Within the last year has

anyone died and left you any inheritance?

MR. AJUNWA:  No.

MS. AJUNWA:  No.

MR. SAPIR:  Might you be the beneficiary

under any will or any trust that you know of?

MR. AJUNWA:  No.

MS. AJUNWA:  No.

MR. SAPIR:  Counsel, on Schedule C,

although it's minimal, but you're going to

have to amend.  You claim cash and you can't

claim a homestead exemption at the same time,

so take the cash out.  It's not going to make

a difference, but we got to take it out.

Otherwise I have to object to it.

MR. PASIAS:  Which cash?

MR. SAPIR:  You claimed $200 cash.  The

checking.

MR. PASIAS:  All right, no problem, I'll

change it.

MR. SAPIR:  It's just a formality.  All right, schedules state that Mr. is employed by the Services for the Underserved.

MR. AJUNWA:  Yes.

MR. SAPIR:  And Mrs. is employed by Harlem United Community Aids.

MS. AJUNWA:  Yes.

MR. SAPIR:  Okay.  And Mr., what do you do for your employer? What's your occupation? What do you do for a living?

MR. AJUNWA:  I'm a social worker.

MR. SAPIR:  Social worker, okay  . And Mrs., what do you do for your employer?

MS. AJUNWA:  I'm also a social worker.

MR. SAPIR:  Social worker, okay.  How old is the son, because we have to have ages. Don't give me names, but how old is the son?

MS. AJUNWA:  Twenty.  The youngest?

MR. SAPIR:  I don't know, it says all you have is one son and one daughter.

MS. AJUNWA:  Yes, twenty years old.

MR. SAPIR:  Twenty.  And how old is the daughter?

MR. AJUNWA: Twenty-five.

MR. SAPIR: Twenty-five, okay. And they're both living at home?

MS. AJUNWA: Yes.

MR. SAPIR: Okay. According to the schedules, you both take home about just under $4,500 per month, is that correct?

MR. AJUNWA: That's right.

MR. SAPIR: And how much is the monthly mortgage payment?

MR. AJUNWA: $1,674.76.

MR. SAPIR: Does that mortgage payment include the real estate taxes?

MR. AJUNWA: Yes.

MR. SAPIR: How about homeowner's insurance?

MR. AJUNWA: Yeah, it's included.

MR. SAPIR: Included. Gas, electric, and heat fuel runs you about $300 a month?

MS. AJUNWA: Yes.

MR. SAPIR: Food bill runs you about $400 a month.

MS. AJUNWA: Yes.

MR. AJUNWA: Yes.

MR. SAPIR:  Transportation runs you, if I could see it, 180?

MS. AJUNWA:  Yes.

MR. AJUNWA:  Yes.

MR. SAPIR:  Car insurance is $300 a month? You have to say yes or no.

MR. AJUNWA:  Yes.

MR. SAPIR:  Okay, and you have to pay for the grandchildren's schooling?

MR. AJUNWA:  Yes.

MS. AJUNWA:  Yes.

MR. SAPIR:  Yeah, I know, but it's grandchildren.  I have a problem with that, but maybe they have a problem with it also. But that's just a gratuitous payment. There's nothing that obligates them to make that payment.  And how did you folks get into your financial difficulties?

MR. AJUNWA:  I had an accident and I was - -

MR. SAPIR:  Okay.  Did you have insurance at the time?

MS. AJUNWA:  Yes.

MR. SAPIR:  Okay.

1

2      MR. PASIAS:  He had a minimal policy.

3      That got a 430,000 excess verdict.

4      MR. SAPIR:  Okay.  Creditor, any

5      questions?

6      MS. MYATT:  I have a number of

7      questions, but apparently I'm going to have

8      to - -

9      MR. SAPIR:  [interposing] Right on 2004,

10     right.  Well you can ask a couple, I'll give

11     you a couple.  So give me your two best.

12     MS. MYATT:  My two best.  Are you folks

13     still citizens in Nigeria?

14     MR. AJUNWA:  No.

15     [crosstalk]

16     MR. AJUNWA:  Yes, yes, yes.

17     MS. MYATT:  Okay, do you own property in

18     Nigeria?

19     MR. AJUNWA:  No we don't.

20     MS. MYATT:  One more.

21     MR. SAPIR:  Okay.

22     MS. MYATT:  Do you have family in

23     Nigeria?

24     MR. AJUNWA:  Her mother, yes.

25     MS. AJUNWA:  My mother - -

MS. MYATT:  You only giving me those three?

MR. SAPIR:  You want to get another good one?

MS. MYATT:  You know I do.

MR. SAPIR:  Okay, all right, go ask it.

MS. MYATT:  Did your mother live in a home in Nigeria?

MS. AJUNWA:  No.

MS. MYATT:  Excuse me?

MR. AJUNWA:  No, no, no.

MS. MYATT:  She lives in an apartment or she lives in a house?

MR. AJUNWA:  She lives in an apartment.

MS. AJUNWA:  An apartment.

MS. MYATT:  An apartment?

MR. AJUNWA:  In the village, yes.

MS. MYATT:  She pays rent or it's something she owns?

MS. AJUNWA:  - - A small house where they have been living for years.

MS. MYATT:  Okay, does she own that house?

MS. AJUNWA:  Yeah.

1

2          MS. MYATT:  Okay, are either of you co-

3     owners of that property?

4          MS. AJUNWA:  No, no.

5          MS. MYATT:  Do you have any bank

6     accounts in Nigeria?

7          MS. AJUNWA:  No.

8          MR. SAPIR:  Okay, so you can ask for the

9     rest of the 2000 report.

10          MS. MYATT:  I appreciate it.

11          MR. SAPIR:  Okay.

12          MS. MYATT:  Thank you sir.

13          MR. SAPIR:  All right, so I have no

14     further questions, and I'm going to close the

15     meeting.  Okay.

16          [END OF HEARING]

# C E R T I F I C A T E

I, Walter Baker, certify that the foregoing transcript
of proceedings in the Bankruptcy Court of the 341
Hearing of Nathaniel Ajunwa and Regina Ajunwa, Case
No. 10-15981 was prepared using standard electronic
transcription equipment and is a true and accurate
record of the proceedings.


Tape #1019

Counter #s ___N/A_____ to _____

Signature: *Walter Baker*

Date: December 22, 2010

ERRATA SHEET FOR TRANSCRIPT OF _____

RE: _____    DATE TAKEN: _____

PAGE      LINE #        CORRECTION        REASON

_____

WITNESS' NAME

SUBSCRIBED AND SWORN TO THIS

_____ DAY OF _____, 200____

_____

**EXHIBIT E – Comparable Search**

# New York City Buildings Comparable Sales Search for: 912 E 220 St

## Property Type: Two family Brick (B1)

Shark

### Current search criteria

- Zip code: 10469
- Sales within the last 6 months
- Two Families

### Search results statistics

| | |
|---|---|
| Number of properties found: | 3 |
| Low price: | $109,000 |
| High price: | $529,608 |
| Median price: | $525,000 |
| Median Price per SF: | $190 |
| Median Gross SF: | 2,668 |
| Value of subject property at Median Price per SF: | $403,750 |

| Address | Seller & buyer | Building Class / Time held | Date closed / Transfer type | Distance / Year built | Gross SF / Bldg dimensions | Price per SF / Neighborhood | Price/land SF / Zip code | Sale price |
|---|---|---|---|---|---|---|---|---|
| **912 E 220 St** | Waithe, Florence to Ajunwa, Nathanial | Two family Brick (B1) | 3/1/1993 (recorded) / No sale price | 0.00 / 1960 (estimated) | 2,125 / 20 ft x 37 ft | n/a / Williamsbridge, Ollnville | $0 / 10469 | n/a |
| **2573 Laconia Ave** | Fox, Claire to Alhumadi, Siddek S | Two family Miscellaneous (B9) | 5/12/2010 / Normal | 1.16 / 1940 (estimated) | 2,495 / 20.67 ft x 38 ft | $210 / Allerton, Pelham Gardens | $229 / 10469 | $525,000 |
| **2556 Hone Ave** | David Lesch, Es Q, Referee to Homesales, In C | Two family Brick (B1) | 5/17/2010 / Normal | 1.20 / 1935 (estimated) | 2,784 / 18 ft x 46 ft | $190 / Allerton, Pelham Gardens | $211 / 10469 | $529,608 |



# 1133 Waring Ave

Demiroska, Fatime And
Mamudoski, Aida And
Demiroski, Idaver to
Demiroski, Idaver

Two family Brick (B1)  3/9/2010

10yrs 4mo  Normal

1-43
1940 (estimated)

2,668
23 ft x 58 ft

$40
Allerton, Pelham
Gardens

$31
10469

$109,000

**EXHIBIT F – Appraisal Report**

RESIDENTIAL APPRAISAL REPORT
OF A 2 FAMILY RESIDENCE AS OF OCTOBER 1, 2010
LOCATED AT:

912 East 220th Street, Bronx, NY 10469-Ajunwa
249328

PREPARED FOR:

George Bassias, Esq
2183 Steinway Street
Astoria, NY 11105

PREPARED BY:
East Coast Appraisal Service
50 Court Street
Suite #508
Brooklyn, NY 11201



Email: info@eastcoastappraisal.com
56 Court Street, Suite 508, Brooklyn, NY 11201
Phone: 718-834-1700   Fax: 718-834-1607

October 1, 2010

Mr. George Bassias, Esq.
2185 Steinway Street
Astoria, NY 11105

Re:   Appraisal Report for Market Valuation Purposes for property located at:
912 East 220th Street [Nathaniel Ajinwal]
Bronx, NY 10469
Effective Date of the Appraised Value October 1, 2010

Dear Mr. Bassias

As requested, we have conducted an inspection of the above premises for the purpose of estimating the fair and reasonable market value of the fee simple estate as of October 1, 2010.  The purpose of this appraisal is to assist in a legal proceeding.

The subject premises consist of a fully attached 2 family brick home in average condition with 1,800 square feet of living area situated on a parcel of land measuring 2,160 sq. ft. The property is located on a quiet block in a section of Bronx County called "Williamsbridge". The overall real estate market in the neighborhood is depressed with many foreclosures and declining property values. There has been an overall estimated 30% decline in property values over the last 3 years.

---

### VALUATION

In our opinion, the fair and reasonable valuation of the subject premises as of September 20, 2010 is:

THREE HUNDRED AND THIRTY FIVE THOUSAND [$335,000] DOLLARS

---

Should you require any additional information, please do not hesitate to contact the undersigned.

Respectfully Submitted,

Michael Pavlakos
Senior Appraiser
NYS Certification #45-00005617
Expires 12/02/2011

2

## SUMMARY OF SALIENT FACTS AND CONCLUSIONS

LOCATION:                          912 East 220th Street, Bronx, NY 10469

COUNTY:                            Bronx

ASSESSORS PARCEL #:                2046900048

SECTION VOLUME:                    1868

BLOCK:                             4690

LOT:                               48

CENSUS:                            0501

IMPROVEMENT:                       3 story attached brick urban row house

GROSS LIVING AREA:                 1,800 square feet

GROSS BASEMENT AREA:               740 sq. ft.

FLOOD INFORMATION:                 Zone X: (Not in a flood zone)
                                   Map Panel #360497-0104  09/05/2007

ZONING INFORMATION:                R-4 MODERATE DENSITY RESIDENTIAL

OCCUPANCY:                         Legal 2 family

VALUE BY SALES COMPARISON APPROACH: $355,000

VALUE BY COST APPROACH:            Not Applicable

VALUE BY INCOME APPROACH:          Not Applicable

FINAL ESTIMATE OF VALUE:           $355,000

EFFECTIVE DATE OF VALUATION:       October 1, 2010

## IMPROVEMENT DESCRIPTION

| | |
|---|---|
| BUILT: | 1960 [+-] |
| FACADE: | Brick |
| EXTERIOR: | Brick |
| ROOF: | Flat-tar paper |
| WINDOWS: | Thermo pane |
| FOUNDATION: | Concrete & stone |

### MECHANICAL

| | |
|---|---|
| PLUMBING: | Copper & galvanized piping |
| HEATING: | Central Heating System/Gas/Circulating Hot Water |
| ELECTRIC: | 220 Volt-100 Amps |
| HOT WATER SUPPLY: | Boiler |

### LAYOUT

| | |
|---|---|
| BASEMENT: | Rec Room-Storage |
| FIRST FLOOR: | Living room, 1 bedroom, kitchen, 1 bath |
| SECOND FLOOR: | Living room, dining room, kitchen, 1/2 bath |
| THIRD FLOOR: | Bedrooms[3] 1 bath |

### CONDITION

As observed in the physical inspection conducted on October 1, 2010 it was noted that the dwelling was in typical average condition with semi-modern kitchens and bathrooms. No measureable deferred maintenance was observed, with the property appearing structurally sound.

# HIGHEST AND BEST USE

Essential to the concept of value is the theory of Highest and Best Use or most profitable use. The Appraisal Institute defines Highest and Best use as follows:

"The most profitable likely use to which a property can be put. The opinion of such use may be based on the highest and most profitable continuous use to which the property is adapted and needed or likely to be in demand in the reasonably near future. However, elements affecting value which while within the realm of possibility is not fairly shown to be reasonably probable should be excluded from consideration. Also if the intended use is dependent upon an uncertain act or another person the intention cannot be considered,

The use of land which may reasonably be expected to produce the greatest net return to land over a given period of time: the legal use which will yield to land the highest present value sometimes called optimum use."

In estimating "Highest and Best Use" there are essentially four considerations:

Possible Use:
To what uses is it physically possible to put the site in question.

Permissible Use:
What uses are permitted by zoning and deed restrictions on the site in question

Feasible Use:
Which possible and permissible uses will produce the highest net return or highest present worth?

Maximally Productive Use:
Among the feasible uses which use will produce the highest net return or the highest present worth,

The Highest and Best Use of the land or site if vacant and available for use may be different from the Highest and Best Use of the improved property. This will be true when the improvement is not an appropriate use and yet makes a contribution to total property value in excess of the value of the site.

Since the appraisal of the subject property is based on a particular premise of use the highest and best use analysis determines just what this premise of use should be. A highest and best use analysis consists of considering the highest and best use of a property under two assumptions; with a vacant and available site and with the property as improved. These two assumptions on highest and best use are correlated into one final estimate of highest and best use.

5

## Land as if Vacant and Available

The physical characteristics of the site impose few development restrictions. Because of its size and shape the parcel has limited uses.

The legal restrictions applicable to the site consist of zoning regulations enforced by the local municipality. These regulations limit the site to residential use.

The immediate area consists of primarily residential and commercial properties with typical supporting commercial overlay. In this sense the subject property melds well with the other properties in the area.

If the site were vacant and available today the highest and best use would be for residential development.

## Property as Improved

**The subject site was improved with a 3,800 square foot legal 2 family home. The current use of the property is permissible under the existing zoning ordinance.**

The area surrounding the subject property is mixed residential/commercial. We considered all information pertaining to the physical characteristics of the site, including size, shape, access, topography and the availability of utilities. Based on a consideration of all pertinent data we have concluded that the subject site is physically suited for its present use.

After estimating the value of the subject land under the present use we considered whether any other uses which are physically possible, legally permissible, or financially feasible would support a higher land value.

We have concluded that the present use of the subject property is the use, which we considered to be maximally productive.

Given that the analysis meets the four criteria of Highest and Best Use, it is concluded that the use, which represents the Highest and Best Use of the subject property was that of its use on October 1, 2010.

# DEFINITION OF MARKET VALUE

The valuation set forth in this report is "market value", defined as the probable price in terms of money which a property will bring in a competitive and open market under all conditions requisite to a fair sale. Specifically, the purchaser and the seller are to each act prudently, knowledgeably, and that the agreed price is not affected by inappropriate stimulus, duress or motivation.

Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to purchaser under conditions whereby:

1) Buyer and seller are typically motivated.

2) Both parties are well informed or well advised, and each acts in what they consider being in their own best interests.

3) A reasonable amount of time is allowed for exposure in the open market.

4) Payment is made in cash or its equivalent.

5) Financing is on terms generally available in the community as of a specified date and typical for the property type in its locale.

6) The price represents an accepted consideration of the property sold unaffected by special financing amounts and/or terms, services, fees, costs or credits occurred in the transaction.

# THE APPRAISAL PROCESS

There are three traditional approaches that can be employed in establishing market value. These approaches generally referred to us the Sales Comparison Approach, the Cost Approach, and the Income Approach.

The Sales Comparison Approach: The Sales Comparison Approach is a set of procedures in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, then applying appropriate units of comparison and making adjustments to the sales prices of the comparables based on the elements of comparison. The sales comparison approach may be used to value improved properties, vacant land, or land being considered as though vacant; it is most common and preferred method of land valuation when an adequate supply of comparable sales is available.

The Cost Approach: The Cost Approach is a set of procedures through which a value indication is derived for the fee simple interest in a property by estimating the current cost to construct a reproduction (or replacement for) the existing structure, including an entrepreneurial incentive, deducting depreciation from the total cost, and adding the estimated land value. Adjustments may then be made to the indicated fee simple value of the subject property to reflect the value of the property interest being appraised. The cost approach is not applicable to condominium units and therefore was not developed.

The Income Approach: The Income Capitalization Approach is a set of procedures through which an appraiser derives a value indication for an income-producing property by converting its anticipated benefits (cash flows and reversion) into property value. This conversion can be accomplished in two ways. One year's income expectancy can be capitalized at a market-derived capitalization rate or at a capitalization rate that reflects a specified income pattern, return on investment, and change in the value of the investment. Alternatively, the annual cash flows for the holding period and the reversion can be discounted at a specified yield rate. The cost approach is not applicable to condominium units and therefore was not developed.

Reconciliation: Reconciliation is the last phase of any valuation assignment in which two or more value indications derived from market data are resolved into a final value opinion, which may be either a final range of value or a single point estimate.

Since this assignment specifically calls for an estimate of market value of a typical residential dwelling for the subject area, the "Sales Comparison Approach", has been utilized and given most emphasis. Properties similar to the subject are typically valued by the sales comparison approach. Due to the lack of new construction and limited investment in residential dwellings, the cost approach and income approach are not considered reliable indicators of market value, and are therefore not utilized.

# THE SALES COMPARISON APPROACH

The Sales Comparison Approach relies upon an analysis of recent sales of similar properties and proves an indication, in theory, of what the subject property itself would sell for as of the date of valuation. Sales comparisons are reduced to a common unit rate, such as the price per square foot. The sales utilized in my analysis are very similar in terms of physical and location characteristics as compared to the subject property and could be considered excellent indicators of market value. After adjusting for differences in time, location, size and utility, these sales provide a range of value in which the subject property will fall.

In choosing comparable sales, the appraiser focused upon similar brick urban row houses of vintages similar to our 20 year old subject property within the subject market area with comparable use and, to the degree possible, comparable size. The property rights conveyed were on a Fee Simple basis.

A careful investigation of the market revealed (3) sales the appraiser deemed to be comparable to the subject. The comparable sales were analyzed on a price per square foot of gross living area and compared to the subject property for differences in date of sale, location, building size, land/building ratio, physical characteristics and amenities.

The following is a summary of the salient features for the comparable sales selected.

| COMPARABLE SALE #1 | |
|---|---|
| LOCATION: | 1051 East 229th Street, Bronx, NY 10469 |
| PROXIMITY: | .23 Miles |
| UNIT SIZE: | 1,800 Square Foot-Legal Two Family |
| ROOMS / BATH(S): | (9) Rooms, (4) Bedrooms, and (2.5) Bathrooms |
| SELLING PRICE: | $339,000 |
| TRANSFER DATE: | 2/20/2010 |
| SELLING PRICE PER SQUARE FOOT: | $188.54 |
| DATA SOURCE REFERENCES/ COMMENTS | Geodata Plus Inc. This was a similar-style home in average condition |

| COMPARABLE SALE #2 | |
|---|---|
| LOCATION: | 4038 Bronxwood Avenue, Bronx, NY 10469 |
| PROXIMITY: | .42 Miles |
| UNIT SIZE: | 1,500 Square Foot-Legal Two Family |
| ROOMS / BATH(S): | (9) Rooms,(4) Bedrooms, and (2.5) Bathrooms |
| SELLING PRICE: | $325,000 |
| TRANSFER DATE: | 1/21/2010 |
| SELLING PRICE PER SQUARE FOOT: | $216.67 |
| DATA SOURCE REFERENCES/ COMMENTS | Geodata Plus, Inc. This was a smaller home in good condition |

| COMPARABLE SALE # 3 | |
|---|---|
| LOCATION: | 1025 East 218th, Bronx, NY 10469 |
| PROXIMITY: | .17 Miles |
| UNIT SIZE: | 2,200 Square Foot-Legal Two Family |
| ROOMS / BATH(S): | (12) Rooms,(6) Bedrooms, and (5) Bathrooms |
| SELLING PRICE: | $350,000 |
| TRANSFER DATE: | 6/21/2010 |
| SELLING PRICE PER SQUARE FOOT: | $159.09 |
| DATA SOURCE REFERENCES/ COMMENTS | Geodata Plus, Inc. This was a larger home in similar condition |

# COST APPROACH

Please note that the subject property is a "typical" condominium unit for the subject area. There is ample verifiable supporting sales data. The "Direct Sales Comparison Approach" can therefore most effectively ascertain the overall marketability of the subject property. The "Cost Approach" is therefore considered "not applicable".

Due to the lack of residential new construction, and the scarcity of available building lots in the subject area, the "Cost Approach" is not considered a valid indicator of market value, and was not considered in this report.

## INDICATED VALUE BY THE COST APPROACH

Not Applicable

## THE INCOME APPROACH

The underlying assumption of the Income Approach is that the typical, prudent purchaser will pay no more for a property than the interest. The value is derived through the capitalization process. This estimate is based upon an analysis of the property's potential net revenue flow:

The following is the methodology applicable in this approach:

1) The projection of the potential income from all sources which a competent owner or manager may legally generate from the realty over a specific or estimated period of time,

2) An estimate of vacancy and bad debts, as well as expenses incurred in the operation of the realty, These deductions, subtracted from the potential gross income, result in a stabilized net operating income.

3) The development of an overall rate. This includes the weighted affect of a percentage return to the equity position, the weighted effect of the debt service and the present worth of the future disposition or refinancing of the realty,

4) The overall rate, when divided into the net operating income, produces the final estimates of value

---

Properties similar to the subject are typically not traded for their income potential. The "Income Approach" was therefore not considered to be a statistically viable indicator of value, and is consequently not utilized in this report.

---

## INDICATED VALUE BY THE INCOME APPROACH

Not Applicable

## RECONCILIATION OF VALUE

In the previous sections of this appraisal report, the three approaches to estimate value have been considered, utilized, and emphasized as they apply to the fee simple of the ownership of the subject property and these indicated values are:

| | |
|---|---|
| Market Data/Direct Sales Comparison. | $335,000 |
| Cost Approach | Not Applicable |
| Income Approach | Not Applicable |

Since this assignment calls for the appraisal of a typical residential 2 family home, the Direct Sales Comparison Approach was given most emphasis. Supporting sales were deemed to be comparable to the subject property were ascertained. Adjustments were made to these market supporting comparable sales for any differences between them and the subject property. All comparable sales were visited and adjusted where necessary for value influencing characteristics such as location, condition, and size. Once reconciled, these comparables provided reliable insight as to the subject's market value.

The Cost Approach was considered as "not applicable" as the subject property is typical to the area. There is ample supporting market data consequently making it inappropriate to place any emphasis on the cost approach.

The Income Approach was considered "not applicable". The types of properties are not typically purchased for their rent potential to an investor.

Assumptions made in the comparable market analysis were both reasonable and consistent. It is our opinion that the analysis yielded an estimate which best represents the Market Value of the subject property as previously defined in this report.

It is our judgment and opinion that the Market Value of the subject property as of October 1, 2010 is:

### THREE HUNDRED AND THIRTY FIVE THOUSAND DOLLARS
### $335,000

Michael Pavlakos
Senior Appraiser
NYS Certification #45-00005617
Expires 12/02/2011

# ADDENDUM SECTION









## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

CONTINGENT AND LIMITING CONDITIONS: The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to do it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in questions, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property.
The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must NOT be considered as any type environmental assessment or property inspection of the property

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers being reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser may have based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional, appraisal organizations of the firm with which the appraiser is associated) to anyone other than the borrower, the mortgage of its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department agency, or instrumentality of the United States or any state of the District Of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service (s) without having to obtain the appraiser's prior written consent.

The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a NEGATIVE adjustment is made to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a POSITIVE adjustment is made to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and, I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report predetermined value or direction in value that favors the cause of the client or any related party, the amount of value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply (unless specifically stated so). I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise state in the reconciliation section.

8. I have personally inspected the *exterior only* areas of the subject property, and the exterior of all

properties listed as comparables in the appraisal report (unless otherwise indicated). I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal of the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I take no responsibility for it.

Michael Pavlakos, as president

21



The Real Estate Valuation & Inspection Specialists    Email: info@eastcoastappraisal.com
TOLL FREE-866-228-2153 F/N, 718-854-3507

# MICHAEL G. PAVLAKOS-UNIFIED COURT SYSTEM FIDUCIARY SPECIAL ID # 280774

## QUALIFICATIONS PROFILE

Michael G. Pavlakos is a New York State Certified Real Estate Appraiser who has been preparing real estate appraisals for the legal profession for over sixteen years. Many of these assignments were performed in the capacity as neutral appraiser court appointed by the New York State Supreme Court from Supreme Court Justices in the five Boro's, Nassau, Suffolk and Westchester Counties. These assignments ranged from small residential properties to large, complex industrial properties prepared on properties located on a local, national and international level.

## EXPERIENCE

1991-PRESENT        East Coast Appraisal Service                Brooklyn, NY
*President, Senior Appraiser*
- Responsible for appraiser performance and quality control on all assignments prepared on behalf of the State of New York's Unified Court System in the five Boro's of New York, Nassau, Suffolk and Westchester Counties.
- Senior Appraiser responsible for the quality and integrity of all residential and commercial appraisals prepared for some of the country's leading mortgage lenders.
- Coordinate and supervise all national and international appraisal assignments.

1986-1991        Appraisal Advocates                Brooklyn, NY
*Managing Director, Partner*
- Operations Manager supervising and coordinating appraisal assignments.
- Senior Review Appraiser and Quality Control Manager overseeing a staff of fifteen real estate appraisers.

1983-1986        Vardakis Associates                Brooklyn, NY
*Senior Real Estate Appraiser & Trainer*
- Appraised over 1,500 residential and commercial properties.
- Instructed and trained staff both in the field and in the office in the preparation of professional real estate appraisal reports.

## EDUCATION

1997        New York University                New York, NY
- Graduate, Degree in Liberal Arts

- The Real Estate Institute (Real Estate and Property Appraisals)
  Examinations Passed.
  - Course 8-1 -Principals of Real Estate Appraisals. [Appraisal Institute/1984]
  - Course 8-2 -Residential Valuation [Appraisal Institute/1984]
  - Course 8-3 -Standards of Professional Practice [Appraisal Institute/1985]
  - Market Data Analysis of Residential Real Estate [6/91] N.A.I.F.A.
  - Residential Report Writing [8/91] N.A.I.F.A.

* Course R61- Insp/Eval Property Physical Condition [NYU 11/2004]
* Course N62- Ethics/ Standards USPAP [NYU 11/2004]

## PROFESSIONAL AFFILIATIONS

* Member, American Society of Appraisers [ASA]
* Member, Appraiser's Guild of the Office and Professional Employees International Union/OPEIU/AFL-CIO

REFERENCES AVAILABLE UPON REQUEST

**EXHIBIT G – Affidavit of Service**

ATTORNEY:

Rene Myatt, Esq.

204-04 Hillside Avenue, 2nd Floor

Hollis, New York 11423

SEAN HILL,

        Plaintiff,

-against-

NATHANIEL AJUNWA and REGINA AJUNWA,

        Defendants

---

## AFFIDAVIT OF SERVICE

**STATE OF NEW YORK, COUNTY OF NEW YORK**

**JEFFREY RUBELL** being duly sworn deposes and says: Deponent is not a party herein, is over 18 years of age and resides in New York State. On **March 15, 2011 at 4:15 pm**, at **912 East 220th Street, Bronx, NY 10469** deponent served the within: **SUBPOENA** On: **Regina Ajunwa**

The Index number and the filing date of the action were endorsed upon the face of the papers so served herein.

☐ #1 INDIVIDUAL By delivering a true copy of each to said recipient personally; deponent knew the person served to be the person described as said person therein.

☐ #2 CORPORATION By delivering thereat a true copy of each to personally, deponent knew the person so served to be the of the corporation, and authorized to accept service on behalf of the corporation.

☒ #3 SUITABLE AGE PERSON By delivering a true copy of each to **Uchenna Ajunwa-son** a person of suitable age and discretion. Said premises is a recipients:
[ ] actual place of business [☒] dwelling house (usual place of abode) within the state.

☐ #4 AFFIXING TO DOOR By affixing a true copy of each to the door of said premises, which is recipient's:
[ ] actual place of business [ ] dwelling house (usual place of abode) within the state.

☒ #5 MAIL COPY On **March 16, 2011**, deponent completed service by depositing a true copy of each document to the above address in a 1st Class postpaid properly addressed envelope marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office in the State of New York.

☒ #6 DESCRIPTION A description of the Defendant, or other person served, or spoken to on behalf of the Defendant is as follows: Sex: **Male** Race: **Black** Color of Hair: **Black** Age: ~**21** Height: ~**5'9"** Weight: ~**180-190**

☒ #7 WIT. FEES the authorized witness fee **$18.00** and / or traveling expenses were paid (tendered) to the recipient.

☒ #8 MILITARY SERVICE Deponent asked person spoken to whether the recipient was presently in military service of the United States Government or of the State of New York and was informed that recipient was not. Recipient wore ordinary civilian clothes and no military uniform.

Sworn to Me on   *3-16-11*

                                             **JEFFREY RUBELL**

DANIEL A. LEVINE

NOTARY PUBLIC-STATE OF NEW YORK

No.01LE6154152

Qualified in Queens County

My Commission Expires:

October 23, 2014

                                             License #1335175

ATTORNEY:
Rene Myatt, Esq.
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423

SEAN HILL,

       Plaintiff,

-against-

NATHANIEL AJUNWA and REGINA AJUNWA,

       Defendants

## AFFIDAVIT OF SERVICE

**STATE OF NEW YORK, COUNTY OF NEW YORK**

**JEFFREY RUBELL** being duly sworn deposes and says: Deponent is not a party herein, is over 18 years of age and resides in New York State. On **March 15, 2011 at 4:15 pm**, at **912 East 220th Street, Bronx, NY 10469**deponent served the within: **SUBPOENA** On: **Nathaniel Ajunwa**
The Index number and the filing date of the action were endorsed upon the face of the papers so served herein.

☐ **#1 INDIVIDUAL** By delivering a true copy of each to said recipient personally; deponent knew the person served to be the person described as said person therein.

☐ **#2 CORPORATION** By delivering thereat a true copy of each to personally, deponent knew the person so served to be the of the corporation, and authorized to accept service on behalf of the corporation.

☒ **#3 SUITABLE AGE PERSON** By delivering a true copy of each to **Uchenna Ajunwa-son** a person of suitable age and discretion. Said premises is a recipients:
[ ] actual place of business [☒] dwelling house (usual place of abode) within the state.

☐ **#4 AFFIXING TO DOOR** By affixing a true copy of each to the door of said premises, which is recipient's:
[ ] actual place of business [ ] dwelling house (usual place of abode) within the state.

☒ **#5 MAIL COPY** On **March 16, 2011**, deponent completed service by depositing a true copy of each document to the above address in a 1st Class postpaid properly addressed envelope marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office in the State of New York.

☒ **#6 DESCRIPTION** A description of the Defendant, or other person served, or spoken to on behalf of the Defendant is as follows: Sex: **Male** Race: **Black** Color of Hair: **Black** Age: **~21** Height: **~5'9"** Weight: **~180-190**

☒ **#7 WIT. FEES** the authorized witness fee **$18.00** and / or traveling expenses were paid (tendered) to the recipient.

☒ **#8 MILITARY SERVICE** Deponent asked person spoken to whether the recipient was presently in military service of the United States Government or of the State of New York and was informed that recipient was not. Recipient wore ordinary civilian clothes and no military uniform.

Sworn to Me on   3-16-y

                                    **JEFFREY RUBELL**

DANIEL A. LEVINE
NOTARY PUBLIC-STATE OF NEW YORK
No.01LE6154152
Qualified in Queens County
My Commission Expires:
October 23, 2014

                                  License #1335175

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In Re

                                           Case No.: 11-11363-ALG

NATHANIEL AJUNWA and REGINA AJUNWA,

                                           Chapter 7

                Debtors.

-------------------------------------------------------------------X

=================================================================

**AFFIRMATION IN OPPOSITION TO DEBTORS MOTION TO AVOID THE
JUDICIAL LIEN OF SEAN HILL FOR $430,000.00**

-------------------------------------------------------------------------------------------------

**THE LAW OFFICE OF
RENÉ MYATT
204-04 HILLSIDE AVENUE 2ND FLOOR
HOLLIS, NEW YORK 11423
PHONE: (718) 468-3588
FAX:    (718) 468-5731**

=================================================================
=================================================================

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts
of New York State, certified that upon information and belief and reasonable inquiry, (1) the
contentions contained in the annexed document are not frivolous and that (2) if the annexed
document is an initiating pleading, (*i*) the matter was not obtained through illegal conduct, or that
if it was, the attorney or other persons responsible for the illegal conduct are not participating in
the matter or sharing in any fee earned there from and that (*ii*) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in violation of 22
NYCRR 1200.41-a.

Dated: Hollis, New York April 27, 2011

Signature _René Myatt_____

Print Signer's Name: René Myatt_____