**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re

NATHANIEL and REGINA AJUNWA

    Debtors

-----------------------------------------------------------x

Chapter 7

Case No. 11-11363 (ALG)


## MEMORANDUM OF DECISION

APPEARANCES:

LAW OFFICES OF GEORGE BASSIAS
*Counsel to the Debtors*
21-83 Steinway Street
Astoria, NY 11105
   By:  George Bassias, Esq.

THE LAW OFFICE OF RENÉ MYATT
*Counsel to Sean Hill*
204-04 Hillside Avenue, 2nd Floor
Hollis, NY 11423
   By:  René Myatt, Esq.

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

**Introduction**

Sean Hill (hereinafter "Hill) has moved for an order dismissing the Chapter 7 bankruptcy

petition of Nathaniel and Regina Ajunwa (hereinafter the "Debtors") alleging that the case was

filed in bad faith under 11 U.S.C. §§ 707(a) and 707(b).  Hill asserts that the Debtors filed for

bankruptcy only to avoid paying a tort judgment entered in his favor and have manipulated the

Code to capitalize on an expanded homestead exemption and to ensure that no assets are

available for distribution to creditors.  As discussed below, Congress has established Chapter 7

as a means for a debtor to obtain a fresh start and has provided only limited reasons for

dismissing a Chapter 7 petition as filed in bad faith.  The courts have not lightly expanded these,

and even if there is a non-statutory basis for dismissing a Chapter 7 case as filed in bad faith, this

case does not merit such severe relief.  The motion is denied.

**Background**

The facts are not disputed.

A.  The State Court Judgment

On October 21, 2010, Hill obtained a judgment for $431,827.50 against debtor Nathaniel

Ajunwa in the Kings County Supreme Court.  The judgment was for damages in a car accident in

which Ajunwa made an illegal turn and struck Hill, causing extensive harm, including the loss of

Hill's spleen and a kidney.  Ajunwa carried only the statutory minimum automobile insurance of

$25,000 for non-fatal injuries, as required by N.Y.C.R.R. 60-1.1. Ajunwa has made no payments

on the judgment, beyond whatever his insurance company has paid.

B.  The Debtors' 2010 Chapter 13 Filing

On November 9, 2010, Ajunwa and his wife filed for relief under Chapter 13 of the Code

in this Court (Case No. 10-15981).  The Debtors listed real property in Bronx county with a

2

value of $330,000 and a mortgage of $170,000 and no other substantial assets.  The Debtors used

the New York state exemptions then in effect, and pursuant to CPLR 5206(a) claimed a

$100,000 homestead exemption ($50,000 each), resulting in $60,000 of non-exempt home

equity.

Although the Debtors never proposed a Chapter 13 Plan, under 11 U.S.C. § 1325(a)(4)

they would presumably have been required to pay over to their one substantial creditor, Hill, the

value of the non-exempt equity in their home.  Hill's judgment accounted for over 90% of the

total claims listed, and he stood to receive almost all of the Plan payments.   Ajunwa's one-half

interest in the property would be $30,000, although it is assumed that his survivorship interest

would be even less.


C.  The Amendment to the New York Homestead Exemption

In 2010, the New York State Legislature passed S7034A-2009, a bill which amended the

New York homestead exemption under CPLR 5206(a), increasing the exemption for homes in

the five New York City counties from $50,000 to $150,000.  The bill was signed by the

Governor on December 22, 2010 and went into effect on January 21, 2011.  The Memorandum

in Support of the Bill stated that the purpose was to "allow a debtor to keep enough property and

money exempt from the satisfaction of a money judgment to continue to live without becoming a

ward of the State."[1]  The previous exemption of $50,000 was described as unrealistically low to

achieve the purpose of the exemption:  to keep debtors in their homes.  CPLR 5206(a)

(McKinney Supp. 2012).

---

[1] S7034A-2009 Introducer's Memorandum, New York State Legislature, available at
http://image.iarchives.nysed.gov/images/images/172190.pdf, (last visited August 23, 2012).

D. The Dismissal of the Debtors' Chapter 13 Filing

On January 11, 2011, a few days before the effective date of the new law, the Debtors

filed a motion to convert their case to a Chapter 7 proceeding.  However, this motion was

withdrawn the next day, and on January 28, 2011, the Debtors filed a motion to voluntarily

dismiss the Chapter 13 proceeding.  The Debtors have never denied that the purpose of the

Chapter 13 dismissal was to take advantage of the revised CPLR 5206(a), which would allow

them to exempt all of their home equity and to receive a discharge in a subsequent Chapter 7

case without the liquidation of any of their assets. The motion to dismiss the Chapter 13

proceeding of dismissal was unopposed, and an order of dismissal was signed on January 31,

2011.  Docket #24 in Case No. 10-15981.  On February 4, 2011, after the order was signed but

prior to its entry on the docket, Hill filed a motion for relief from the automatic stay to foreclose

on his judgment, which was alleged to be a lien on the Debtors' real estate.  The motion was

rendered moot by the closing of the case.[2]


E. The Debtors' 2011 Chapter 7 Filing

On March 28, 2011, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code.

They listed the same real property of $330,000 on Schedule A with the same mortgage of

$170,000 on Schedule D, but claimed a $300,000 ($150,000 each) homestead exemption on

Schedule C.  As a result, the petition on its face showed no assets available for distribution.  The

Debtors' current monthly income pursuant to § 101(10A) of the Code remained below the New

York median for the Debtors' family size.

---

[2] It is assumed that this motion was brought so that the creditors could claim rights under statutory provisions that
govern in a second bankruptcy case where the first case was dismissed after a motion for relief from stay had been
filed.  See, e.g., 11 U.S.C. § 362(c).

4

On April 26, 2011, Hill filed a motion to dismiss the Debtors' proceeding under

§§ 707(a) and 707(b) of the Code.  The motion alleges that the Debtors manipulated the Code to

avoid paying Hill, and that their repeat filings were abusive as efforts to capitalize on the

amended homestead exemption.  The motion also claimed that the Debtors' election to maintain

minimal car insurance was a conscious decision that has now imposed significant costs on Hill.[3]

On August 26, 2011, the deadline to object to the Debtors' discharge under § 727 of the

Code and the dischargeability of any debts under § 523 of the Code expired.  The Chapter 7

trustee thereafter filed a report of no distribution.  On December 7, 2011, the Debtors' discharge

was granted.  The discharge is subject to revocation if the instant motion is granted.

### Discussion

A number of issues are raised by Hill's argument that the Debtors are acting in bad faith

and that their case should be dismissed under §§ 707(a) and 707(b) of the Code.  First, the Court

must determine whether the Debtors are eligible to claim the amended homestead exemption.

Second, it must be determined whether the dismissal of the Chapter 13 proceeding and the

refiling fifty-six days later of a Chapter 7 proceeding constituted bad faith.  Finally, the Court

must determine whether the Debtors have acted in good faith by filing for bankruptcy to

discharge a tort judgment arising out of a car accident.

### A.  The Debtors Are Eligible to Claim the Amended Homestead Exemption

In *CFCU Community Credit Union v. Hayward*, 552 F.3d 253 (2d Cir. 2008), the Second

Circuit held that a 2005 amendment to New York law, increasing the homestead exemption from

---

[3] The motion initially also charged that the Debtors had hidden assets and income.  On June 26, 2011, Hill filed an application to conduct examinations of the Debtors pursuant to Fed. R. Bankr. P. 2004, and an order granting the examinations was entered on June 29, 2011.  At a hearing on January 10, 2012, Hill's attorney indicated that no assets or fraudulent conduct were discovered during the examinations, and the allegations appear to have been laid to rest.

$10,000 to $50,000, applied retroactively to debts incurred prior to the effective date of the amendment, noting that state law governs the scope of the exemption. The Circuit Court found that the issue was governed by the intent of the New York Legislature in adopting the amendment, and that the 2005 amendment, unlike a 1997 change to state exemptions that was expressly made non-retroactive, was intended to be remedial and therefore to protect assets against claims that arose prior to the effective date of the amendment. *Id.* at 265. The 2011 amendment to CPLR 5206(a), like the amendment in 2005, is not expressly non-retroactive. Moreover, the amendment is clearly remedial and was described as completing work left unfinished by the 2005 amendment. CPLR 5206(a) (McKinney Supp. 2012). It should therefore be interpreted in the same way as the 2005 amendment to apply to debts or liabilities incurred prior to the effective date of the amendment.[4]

### B. The Debtors Did Not Act in Bad Faith by Dismissing Their Chapter 13 Proceeding and Filing a Chapter 7 Proceeding Fifty-Six Days Later

As indicated above, the Debtors have never disputed that they dismissed their prior Chapter 13 case in order to take advantage of the amendment to New York law increasing the homestead exemption, and that the Debtors assumed that the prior exemption amount would have applied in their Chapter 13 case, which was filed when the prior law was in effect. *See supra* note 3, at p. 4. The question is thus whether the Debtors acted in good faith in dismissing their original proceeding and refiling shortly thereafter in Chapter 7.

The Bankruptcy Code authorizes the dismissal of a Chapter 13 proceeding in 11 U.S.C. §1307(b), which provides that "on request of the debtor at any time," the court "shall dismiss" a

---

[4] Additionally, it may be too late for Hill to raise an issue regarding the Debtors' exemption claim. Fed. R. Bankr. P. 4003(b)(1) permits a party in interest to object to a claimed exemption within 30 days following the meeting of creditors. Once this deadline has passed, a party in interest may not object to an exemption, even if the debtor had no colorable statutory basis for claiming it. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992). In this case, the meeting of creditors was concluded on April 26, 2011. Even though the Chapter 7 trustee obtained an extension of the objection period, the deadline under Fed. R. Bankr. P. 4003(b)(1) passed as to Hill on May 26, 2011.

case under Chapter 13 if the case has not been previously converted under §§ 706, 1112 or 1208.

The Second Circuit has held that this provision affords a debtor an absolute right to dismiss a

Chapter 13 proceeding. *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616 (2d

Cir. 1999). If *Barbieri* remains good law, the Debtors were merely exercising a statutory right

and were not acting in bad faith when they dismissed their case.

      With respect to the dismissal of the Debtors' first case, the only question as to the

continuing vitality of *Barbieri* is a consequence of the Supreme Court's decision in *Marrama v.

Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). There the Court, construing the language

of § 706(a) of the Bankruptcy Code,  which is very similar to § 1307(b),[5] held that a debtor does

not have an absolute right to convert a Chapter 7 proceeding to a Chapter 13 proceeding where

there is evidence of bad faith. Courts in this Circuit are split on whether the holding of *Marrama*

extends to the dismissal of Chapter 13 proceedings. *Compare In re Procel*, 467 B.R. 297, 305

(S.D.N.Y. 2012) (holding that *Barbieri* remains binding in the Second Circuit unless and until

overruled); *In re Armstrong*, 408 B.R. 559, 569 (Bankr. E.D.N.Y. 2009) (holding that *Marrama*

abrogated *Barbieri* and that bad faith can be grounds to deny the voluntary dismissal of a

Chapter 13 proceeding).

      There is no need to consider whether *Marrama* abrogated *Barbieri* because even if it did,

the Debtors did not act in bad faith in dismissing their Chapter 13 case and refiling to get the

benefit of an increased exemption. The *Armstrong* Court, which reached the issue of good faith

in the dismissal of a Chapter 13 case, applied a totality of the circumstances test consisting of 15

factors to determine good faith. *In re Armstrong*, 409 B.R. at 633-34 *citing Leavitt v. Soto (In re

Leavitt),* 171 F.3d 1219 (9th Cir. 1999). Factors to consider include (1) whether the debtor has

---

[5] Section 706(a) reads: "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section, 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable."

7

stated debts and expenses accurately; (2) whether the debtor has made any fraudulent

representation to mislead the bankruptcy court or (3) has unfairly manipulated the Bankruptcy

Code; (4) the nature of the debt, including the question whether the debt would be

nondischargeable in a Chapter 7 proceeding; (5) the timing of the petition; (6) how the debt

arose; (7) the debtor's motive in filing the petition; (8) how the debtor's actions affected creditors;

(9) the debtor's treatment of creditors both before and after the petition was filed; (10) whether

the debtor has been forthcoming with the bankruptcy court and the creditors; (11) whether the

debtor misrepresented facts in the petition or plan; (12) whether the debtor unfairly manipulated

the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in an inequitable manner;

(13) the debtor's history of filings and dismissals; (14) whether the debtor only intended to defeat

state court litigation; and (15) whether egregious behavior is present.

    In the present case, assuming the issue of the dismissal of the Debtors' Chapter 13 case is

not moot because it was not contested at the time, the *Armstrong* factors can be used to assess

their conduct in dismissing the case.  The Debtors have been honest with the Court on all

matters, including the disclosures on their schedules and the reason for the dismissal of their

Chapter 13 case.  Although they filed to discharge a recently entered tort judgment, the discharge

of such a debt is not prohibited, as further discussed below, and the filing was not a stalling tactic

intended only to delay the state court litigation.  The only adverse impact of the Chapter 13

dismissal was the subsequent maximization of their homestead exemption to the detriment of

their one substantial creditor.  However, exempting property is almost always a detriment to

creditors, but it was the explicit goal of the New York Legislature to protect homesteads,

notwithstanding creditor interests.  Indeed, if Hill is successful in his motion to dismiss and

attempts to collect on his judgment, he will presumably be met with the claim that the current

CPLR 5206(a) exemption applies, not an exemption in effect several years ago. This Court

cannot find a debtor's exercise of a right to use a state-authorized exemption to be an "unfair

manipulation" of the Code.

As to the Debtors' conduct in filing a second case on the heels of the dismissal of the

first, the Supreme Court has held that the filing of more than one bankruptcy petition does not in

itself constitute bad faith. In *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the Court held

that repeat bankruptcy petitions are not categorically prohibited unless they fall under the

specific provisions enumerated by Congress. Congress has dealt with repeat petitions in two

sections. Section 109(g)(2) provides, in relevant part,

> [N]o individual … may be a debtor under this title who has been a debtor in a
> case pending under this title at any time in the preceding 180 days if - -
> the debtor *requested and obtained* the voluntary dismissal of the case following
> the filing of a request for relief from the automatic stay provided by section
> 362 of this title. (emphasis added).

In the situation at bar, Hill filed a stay relief motion on February 3, 2011, but the Debtors had

already "requested" a dismissal of their Chapter 13 case and the order was signed on January 31,

2011. The dismissal order was not entered until February 3, 2011, which was the same date that

the lift stay motion was filed; however, the dismissal order was entered first in time. In any

event, even if there were a question concerning the timing of the dismissal, § 109(g)(2) uses the

conjunctive, therefore the debtor must have *both* requested *and* obtained the voluntary dismissal

*after* the creditor filed the lift stay motion for the section to apply. *In re Easton,* 166 B.R. 793,

795 (E.D.N.Y. 1994); *see also In re Hicks*, 138 B.R. 505, 507 (Bankr. D. Md. 1992). In the

instant case, at a minimum, the Debtors requested the relief prior to Hill filing the motion to lift

the stay.

Where a debtor files a Chapter 7 case within one year after the dismissal of his or her

prior case, 11 U.S.C. § 362(c)(3) also provides that the second case is presumptively not filed in

good faith as to all creditors if *inter alia* there has not been a substantial change in the financial

or personal affairs of the debtor since the prior dismissal or any reason to conclude that the case

will not result in a discharge.  11 U.S.C. § 362(c)(3)(C)(i)(III)(aa).[6]  Such a proceeding is

presumptively not filed in good faith as to a particular creditor if as of the date of dismissal of the

prior case a motion for stay relief was still pending.  11 U.S.C. § 362(c)(3)(C)(ii).[7]  The stay

relief motion was not "pending" after the signing of the order of dismissal, and the Debtors

should not be penalized for any delay in entry.  Additionally, the Debtors' ability to exempt all of

their home equity rather than only a portion of it might possibly qualify as a change in the

Debtors' financial affairs under 11 U.S.C. § 362(c)(3)(C)(i)(III).[8]

Courts have also created a test to assess good faith under § 362(c)(3) in the context of a

motion to reimpose the automatic stay.  *In re Montoya*, 342 B.R. 312, 317 (Bankr. S.D. Cal.

2006).  The factors have included (1) whether the debtor misrepresented facts in the petition; (2)

the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state

court litigation; and (4) whether egregious behavior is present.  *Id. citing Leavitt*, 171 F.3d at

1224.  Good faith requires "honesty of intention" by the debtor in question.

---

[6] Some courts have noted that the language of 11 U.S.C. § 362(c)(3)(C)(i) lacks clarity; nevertheless, the purpose of the section appears to be to create a presumption of a bad faith filing where a debtor files a subsequent bankruptcy case without the intent or ability to successfully conclude the case. *See, e.g., In re Castaneda*, 342 B.R. 90, 94 n. 5 (Bankr. S.D. Cal. 2006) (interpreting the Chapter 13 related subsection (bb), which is comparable to the Chapter 7 related subsection (aa), as appearing to contain a drafting error).

[7] Although the penalty for triggering § 362(c) would be the expiration of the automatic stay rather than dismissal of the case, the statute nonetheless provides a standard to assess good faith.

[8] While Hill's attorney argues that this does not qualify as a change in financial circumstances, Hill's Mot. Dismiss ¶54, it was this very change in circumstances that prompted the Debtors' dismissal and refiling, a point noted elsewhere in the motion. Id. at ¶14.

10

In the present case, the Debtors have only filed bankruptcy once before, have been honest

with the court in both cases, and have not engaged in any egregious conduct.  While the Debtors

did refile to exempt assets from a state court judgment creditor, they did not file to stay state

court litigation.  Their case can easily be contrasted with the Chapter 13 debtor that repeatedly

files to prevent a mortgagee from foreclosing on its collateral.  Thus, the analysis of the Debtors'

good faith here appear substantially similar to the analysis under the *Armstrong* factors, and the

conclusion is the same.

### C.  Hill's Motion to Dismiss Under §§ 707(a) and 707(b) Should Be Denied

The Bankruptcy Code also contains several statutory provisions that provide for dismissal

of a filing as made in bad faith.  First, under § 707(a), a court may dismiss a Chapter 7 case for

"cause," including unreasonable delay by the debtor, nonpayment of any fees, or failure to

comply with the duties imposed on a debtor by 11 U.S.C. § 521.[9]  The statutory illustrations of

cause are not exclusive but they all relate to a debtor's conduct after the petition has been filed.

In the present case, none of these three factors is present.

Prior to the amendments to the Bankruptcy Code in 2005, the Circuits were split on

whether a standard such as bad faith can serve as "cause" for dismissal under § 707(a).  *Compare*

*Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126-27 (6th Cir. 1991)

(finding lack of good faith as an implicit jurisdictional requirement and thus grounds for

dismissal under § 707(a)); *with In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) (finding

§ 707(a) reserved for technical violations of the Code).  The Second Circuit did not rule on the

---

[9] Section 707(a) provides:
The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
    (1)   unreasonable delay by the debtor that is prejudicial to creditors;
    (2)   nonpayment of any fees or charges required under chapter 123 of title 28; and
    (3)   failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court
         may allow after the filing of the petition commencing such case, the information required by paragraph
         (1) of section 521, but only on motion by the United States trustee.

issue, but courts in this Circuit frequently followed *Zick* in dismissing cases under § 707(a)

where there is an absence of good faith. *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 442 (2d

Cir. BAP 1997), citing H.R. Rep. No. 95–595, at 380 (1977), held that courts must engage in a

case-by-case analysis to determine if dismissal is in the "best interest of all parties." *Dinova*, 212

B.R. at 442.  The party moving for dismissal bears the burden of proving cause by a

preponderance of the evidence, and court also exercises substantial discretion in determining a

motion to dismiss under § 707(a). *In re Aiello,* 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010). *See*

*also In re Lombardo*, 370 B.R. 506, 511 (Bankr. E.D.N.Y. 2007); *In re Griffieth*, 209 B.R. 823,

827–28 (Bankr. N.D.N.Y. 1996).  Courts considered a variety of factors in assessing good faith

under § 707(a). *In re Griffieth*, 209 B.R. at 827 (laying out a six factor test); *In re Keobapha*,

279 B.R. 49, 53 (Bankr. D. Conn. 2002) (laying out a fourteen factor test); *In re Lombardo*, 370

B.R. at 512-13 (adopting the *Griffieth* test while also using nine of the *Keobapha* factors).  There

is a further question whether the cases survived the 2005 Amendments, as the adoption in 2005

of a specific "filed in bad faith" standard in § 707(b) supports the proposition that bad faith

cannot serve as a cause for dismissal under § 707(a).  Marianne B. Culhane and Michaela M.

White, Catching Can-Pay Debtors: Is the Means Test the Only Way?, 13 Am. Bankr. Inst. L.

Rev. 665, 683, n.89 (2005), *citing In re Padilla*, 222 F.3d at 1191.  In any event, this issue need

not be reached; even assuming that there is continuing judicial discretion to dismiss for lack of

good faith under § 707(a), the Debtors did not act in bad faith.  The *Armstrong* factors discussed

above compel this conclusion.  The same result obtains under the fifteen factor approach in

*Lombardo*, which is the most commonly and recently utilized § 707(a) test.[10]  *See also In re*

---

[10] The factors are (1) the debtor's manipulations having the effect of frustrating one particular creditor, (2) the
absence of an attempt to pay creditors, (3) the debtor's failure to make significant lifestyle changes, (4) the debtor
has sufficient resources to pay substantial portion of debts, (5) the debtor inflates expenses to disguise financial
well-being, (6) the debtor is overutilizing protections of the Bankruptcy Code to the unconscionable detriment of

*Parikh*, 456 B.R. 4, 20-21 (Bankr. E.D.N.Y. 2011); *In re Aiello*, 428 B.R. at 302; *In re Mazzella*,

No. 09–78449, 2010 WL 5058395, at \*5-6 (Bankr. E.D.N.Y. 2010).  Indeed, there is general

consensus that the standard for finding bad faith under § 707(a) is stringent, and "is generally

utilized only in those egregious cases that entail concealed or misrepresented assets and/or

sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to

avoid a large single debt *based on conduct akin to fraud, misconduct, or gross negligence*."  *In re*

*Zick*, 931 F.2d at 1129 (emphasis added).

There is no such conduct in the present case.  Hill's bad faith allegations were initially

grounded in large part on accusations of hidden assets or income.  In fact, these accusations were

resolved in the Debtors' favor following an examination of the Debtors pursuant to Fed. R.

Bankr. P. 2004.  As previously noted, bad faith cannot be found in the dismissal of the Debtors'

first petition and the subsequent refiling.  The principal grounds that appear to exist for dismissal

are the Debtors' incurrence of a judgment for negligent operation of a motor vehicle, having only

the minimum car insurance under 11 NYCRR § 60-1.1, and leaving no assets available for their

one principal creditor by claiming the maximum homestead exemption under CPLR 5206(a).  As

a matter of policy, compliance with laws passed by the state Legislature should not serve as

indicia of bad faith, and Hill has not met his burden of justifying dismissal by showing the sort of

fraud or misconduct required under *Zick*.

Moreover, courts have frequently held that filing for bankruptcy in order to counter the

collection efforts of one creditor without further indicia of bad faith is insufficient for dismissal

---

creditors; (7) the debtor reduced his creditors to a single creditor in the months prior to the filing of the petition; (8) the debtor filed in response to a judgment, pending litigation or collection action; (9) there is an intent to avoid a large single debt; (10) the debtor transferred assets; (11) the debtor is paying debts to insiders; (12) the debtor failed to make candid and full disclosure; (13) the debts are modest in relation to assets and income; (14) there are multiple bankruptcy filings or other procedural "gymnastics"; and (15) the unfairness of the use of Chapter 7.

13

under § 707(a). *In re Sudderth*, No. 06–10660, 2007 WL 119141, at *2 (Bankr. M.D.N.C.

2007); *In re Glunk*, 342 B.R. 717, 736 (Bankr. E.D. Pa. 2006); *In re Mazzella*, 2010 WL

5058395, at *6 ("However, the fact that the Debtor filed for bankruptcy in response to pending

litigation without more additional evidence of misconduct is not enough to dismiss this case for

cause under 11 U.S .C. § 707(a)"). In *Keobapha*, 279 B.R. at 50, the Debtor caused two deaths

in a car accident, then filed for bankruptcy after paying out the policy limit on his car insurance.

The court held that filing in response to a single lawsuit is not by itself sufficient to justify

dismissal under § 707(a). *Id*. at 53. By contrast, in *Lombardo*, where the debtor promised her

attorney a share of a settlement in payment of the attorney's fees, then filed for bankruptcy

before the attorney could perfect a lien on the funds, the court found the debtor's pre-petition

deceit as to her only substantial creditor sufficient to warrant dismissal. 370 B.R. at 513-14.

Here, the Debtors' conduct involved no pre-petition fraud, as was the case in *Lombardo*.

        In addition to the possible availability of bad faith dismissal under § 707(a), § 707(b)(1)

provides that a court may dismiss a case filed by a debtor whose debts are primarily consumer

debts if it finds that "the granting of relief would be an abuse of the provisions" of Chapter 7.

However, in determining whether the granting of relief would be abusive, a court must first

determine if a "presumption of abuse" arises under the means test codified in § 707(b)(2). 11

U.S.C. § 707(b)(2)(A)(i). Where a presumption of abuse does not arise under the means test - -

where  Debtors' current monthly income, as defined under § 101(10A), multiplied by twelve is

less than the median family income for the applicable household size - - only the judge or United

States trustee may file a motion under § 707(b). 11 U.S.C. § 707(b)(6). Creditors such as Hill

are not eligible to bring motions pursuant to § 707(b) where § 707(b)(6) applies. *In re Curcio*,

387 B.R. 278, 285 (Bankr. N.D. Fla. 2008).

14

Moreover, even if Hill did have standing to move to dismiss under § 707(b), the

provisions does not apply because the Debtors' debts are not primarily consumer debts. *In re*

*Kelly*, 841 F.2d 908, 913 (9th Cir. 1987) (whether the debtors have primarily consumer debts is a

statutory threshold for a dismissal motion pursuant to § 707(b)).  Consumer debts are defined as

debts "incurred by an individual primarily for a personal, family or household purpose."  11

U.S.C. § 101(8).  The standard was adopted from consumer protection laws to cover typical

consumer credit transactions.  *In re Booth*, 858 F.2d 1051, 1054 (5th Cir. 1988) *citing* H.R. Rep.

No. 95–595 (1977).  Courts have struggled to classify debts that fall outside the scope of this

definition.  *See In re Kestell,* 99 F.3d 146, 149 (4th Cir. 1996) (debt derived from lump sum

award in divorce settlement a consumer debt because not incurred with profit motive); *In re*

*Kelly*, 841 F.2d 908, 913 (9th Cir. 1988) (a home equity line of credit can be consumer debt,

depending on the purpose for which it was incurred); *In re Traub*, 140 B.R. 286, 288 (Bankr.

D.N.M. 1992) (tax debts are not consumer debts).  However, no court has held that a debt

incurred from the negligent operation of an automobile is a consumer debt.  *In re Alvarez*, 57

B.R. 65, 66 (Bankr. S.D. Fla. 1995); *In re White*, 49 B.R. 869, 872 (Bankr. W.D.N.C.) (holding

that debts arising from negligence cannot be "incurred", as volition is required); *In re Marshalek*,

158 B.R. 704, 707 (Bankr. N.D. Ohio 1993) ("Simply stated, a judgment resulting from a

vehicular accident, *per se,* is not a 'consumer debt' as that term is defined under the Code.")

Accordingly, dismissal under § 707(b) is not a remedy available under the facts of this case.

Finally, two other sections of the Code have relevance to the issues raised in this motion.

Section 523 of the Code identifies debts that are excepted from discharge; as relevant here,

§ 523(a)(6) provides for the nondischargeability of a debt arising from willful and malicious

injury by the debtor.  Many creditors have sought to hold debts arising from car accidents

15

nondischargeable under this provision, but absent a showing of intent to harm the plaintiff, even extreme recklessness is not deemed willful under § 523(a)(6). *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002); *see also Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). Claims under § 523(a)(6) as a result of the debtor's failure to carry any car insurance have also failed. *See In re Druen*, 121 B.R. 509, 512-13 (Bankr. W.D. Ky. 1991); *In re Fate*, 100 B.R. 141, 144-45 (Bankr. D. Mass. 1989); *Pechar v. Moore (In re Pechar)*, 98 B.R. 488, 489-90 (D. Neb. 1988). It is also relevant that Congress amended the list of nondischargeable debts in 2005, adding § 523(a)(9) that provides for the nondischargeability of debts resulting from injuries caused by the debtor's operation of a motor vehicle while intoxicated. Congress did not deal with other motor vehicle accidents.

The second relevant statute is the limitation on the use of exemptions added in the 2005 Amendments. If a debtor elects to use State law exemptions, the amount of the exemptions may be capped at $146,450[11] as to certain assets, including homesteads, if the court determines that the filing of the case was an abuse of the Code or the debtor owes a debt arising from *inter alia* a "criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years." 11 U.S.C. § 522(q)(1)(B)(iv). Negligent homicide caused by the operation of an automobile can trigger this limitation. *Larson v. Howell (In re Larson)*, 513 F.3d 325, 330 (1st Cir. 2008) (holding that negligent homicide suffices as a criminal act, the court did not reach the issue of reckless misconduct). Bankruptcy courts have used the *Restatement of Torts* to define reckless misconduct as an intentional act where it is known that there is at least a strong probability that harm may result. *Miller v. Burns (In re Burns)*, 395 B.R. 756, 765 (Bankr. M.D. Fla. 2008).

---

[11] This figure was originally $125,000, but has been increased pursuant to § 104(a) of the Code.

16

In the present case, even assuming *arguendo* that the Debtor's conduct was reckless in connection with the automobile accident, the only available relief to Hill would be to reduce the Debtors' homestead exemption from $150,000 to $146,450 for each Debtor. As the Debtors have only $160,000 of equity in their home, there would be no effect in this case. Indeed, by limiting the exemptions of debtors that have either abused the Code or committed certain acts, Congress appears to have implicitly authorized the use of the homestead exemption up to the dollar cap in § 522(q) of the Code by debtors that have engaged in such conduct, assuming the relevant debt is not deemed nondischargeable. Under this analysis, the Debtors cannot be said to have acted in bad faith by claiming the amended New York homestead exemption because of the effect on a creditor injured by a negligent tort.

### Conclusion

For the foregoing reasons, Hill's motion to dismiss the Debtors' Chapter 7 bankruptcy petition for bad faith under §§ 707(a) and 707(b) of the Code is denied.

IT IS SO ORDERED

Dated:  New York, New York
        September 4, 2012

**s/Allan L. Gropper**
UNITED STATES BANKRUPTCY JUDGE